In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00024-CR


______________________________




RONALD JAY BLACKSHEAR, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 115th Judicial District Court


Upshur County, Texas


Trial Court No. 13,882




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 After Ronald Jay Blackshear pled "true" to having violated the conditions of his community
supervision for possessing less than one gram of cocaine, the trial court adjudicated Blackshear's
guilt and assessed his punishment at eighteen months' imprisonment. Blackshear timely appealed
the trial court's judgment, but his appellate counsel has filed an Anders (1) brief in which counsel
professionally discussed the record, described the issues reviewed, and concluded there were no
arguable grounds for appeal. As required by Anders, counsel also filed a motion to withdraw. 
Counsel also sent Blackshear a copy of the appellate brief and informed him of his right to file a
response pro se and of his right to review the record. 

 This Court informed Blackshear that his response, if any, was due by May 3, 2007. As of
this date, we have not received such a response. Nor has the State submitted a brief or letter analysis
of the appeal. See Tex. Code Crim. Proc. Ann. art. 2.01 (Vernon 2005). 

 We have independently reviewed the record and the brief filed by counsel in this appeal, and
we agree there are no arguable issues that would support an appeal in this case. First, any potential
issues related to Blackshear's original guilty plea (such as voluntariness or evidentiary sufficiency)
would have to have been raised in an appeal from the original plea. Because Blackshear did not
timely appeal the original guilty plea proceeding, we cannot now address any potential issues related
to that proceeding. See Manuel v. State, 994 S.W.2d 658, 661-62 (Tex. Crim. App. 1999). Second,
the Legislature has precluded this Court from reviewing a trial court's decision to proceed to an
adjudication of guilt. Tex. Code Crim. Proc. Ann. art. 42.12, § 5(b) (Vernon 2006). And finally,
the trial court assessed a punishment within the range allowed under Texas law following
Blackshear's judicial admission to having violated two terms and conditions of his community
supervision. See Tex. Penal Code Ann. § 12.42(d) (Vernon Supp. 2006). 

 We agree that the case before us presents no reversible error. (2)

 For the reasons stated, we affirm the trial court's judgment.



 Jack Carter

 Justice


Date Submitted: May 29, 2007

Date Decided: June 14, 2007


Do Not Publish
1. Anders v. California, 386 U.S. 738 (1967).
2. Since we agree this case presents no reversible error, we also, in accordance with Anders,
grant counsel's request to withdraw from further representation of Blackshear in this case. No
substitute counsel will be appointed. Should Blackshear wish to seek further review of this case by
the Texas Court of Criminal Appeals, Blackshear must either retain an attorney to file a petition for
discretionary review or he must file a pro se petition for discretionary review. Any petition for
discretionary review must be filed within thirty days from the date of either this opinion or the last
timely motion for rehearing that was overruled by this Court. See Tex. R. App. P. 68.2. Any petition
for discretionary review must be filed with this Court, after which it will be forwarded to the Texas
Court of Criminal Appeals along with the rest of the filings in this case. See Tex. R. App. P. 68.3. 
Any petition for discretionary review should comply with the requirements of Rule 68.4 of the Texas
Rules of Appellate Procedure. See Tex. R. App. P. 68.4.



', WPFootnote1 )">


            On appeal, Henderson complains only of errors committed during the voir dire of the jury
panel. He initially complains that trial counsel's failure to object to the trial court's actions
constitutes ineffective assistance of counsel, and then seeks to address the alleged errors on their
merits. 
Jury Shuffle
            Henderson argues that two jury shuffles occurred. This contention is premised on the fact
that the clerk's record contains two lists of the jury panel, one of which has the written notation "1st
shuffle" and the other a notation "2nd shuffle." Henderson correctly states that Tex. Code Crim.
Proc. Ann. art 35.11 (Vernon Supp. 2004–2005) has been interpreted by the Texas Court of
Criminal Appeals as allowing one, and only one, shuffle of the panel. See Chappell v. State, 850
S.W.2d 508, 511 (Tex. Crim. App. 1993). It is not clear from the record that two jury shuffles
occurred. The State argues that the first "shuffle" was a list of the individual veniremembers
randomly selected from the central jury pool, and the list with the notation "2nd shuffle" contained
the names of the same panel after the jury shuffle. However, the record does not reveal that any
objection was made to the procedure used by the court. In the absence of an objection, nothing is
preserved for review. Tex. R. App. P. 33.1. Even with a proper objection, a procedural error is not
subject to compulsory reversal. The Texas Court of Criminal Appeals has recently acknowledged
that, because the right to a jury shuffle is statutory in nature, any error in connection therewith must
be evaluated for harm under the standard for nonconstitutional errors. Ford v. State, 73 S.W.3d 923,
924 (Tex. Crim. App. 2002).
Improper Excusal for Cause?
            Henderson also complains about the excusal of African-American panelists for cause without
the trial court's hearing excuses offered as required by Tex. Code Crim. Proc. Ann. art. 35.03, § 1
(Vernon 1989). Again, there was no objection made to the trial court's actions; thus, nothing has
been preserved for our review. See Tex. R. App. P. 33.1.
Batson:
            Henderson also complains about the State's use of a peremptory strike to remove the only
remaining African-American from the panel. This argument, however, is based on counsel's failure
to make a Batson objection, and thus will be addressed in the following discussion of his complaint
that counsel was ineffective.


 We note the excused juror stated he knew the defendant and the
victim, which appears to provide a race-neutral reason for striking the juror.
            In a connected argument, counsel complains that the trial court committed reversible error
by collecting and destroying juror information forms that revealed the race of the
veniremembers—thus increasing the difficulty of effectively raising a Batson claim on appeal. We
find nothing in the record to document that this occurred. Assuming that it did occur, there was also
no objection raised; thus, nothing has been preserved for our review. See Tex. R .App. P. 33.1. 
Ineffective Assistance of Counsel
            The standard of testing claims of ineffective assistance of counsel is set out in Strickland v.
Washington, 466 U.S. 668 (1984). To prevail, Henderson must prove by a preponderance of the
evidence (1) that his counsel's representation fell below an objective standard of reasonableness and
(2) that the deficient performance prejudiced his defense. Id.; Rosales v. State, 4 S.W.3d 228, 231
(Tex. Crim. App. 1999). 
            Henderson contends counsel was ineffective because he failed to object to a second shuffle
of the venire, failed to raise a Batson objection, failed to object to the trial court's sua sponte excusal
of eleven veniremembers, failed to attempt to remove a veniremember by use of a peremptory
challenge or a challenge for cause, and failed to object to seizure and destruction of juror
questionnaires showing the race of each juror. 
            Each alleged error is an error of omission. We cannot determine the reason that counsel did
not object to a second shuffle, did not raise a Batson objection, why he did not object to the excusal
of veniremembers, or why he did not challenge the complained-of veniremember. Further, we
cannot determine from this record whether a second shuffle occurred, or whether juror questionnaires
were indeed "seized and destroyed."



            Direct appeals often present a limited record for review of the typical issues raised in an
ineffective assistance point. Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); 
Phetvongkham v. State, 841 S.W.2d 928, 932–33 (Tex. App.—Corpus Christi 1992, pet. ref'd,
untimely filed). One way to get evidence of counsel's trial strategy or other matters in the direct
appeal record is through a motion for new trial. See Motley v. State, 773 S.W.2d 283, 290 (Tex.
Crim. App. 1989) (evidence relating to counsel's trial strategy appeared in the record because a
motion for new trial was held on the issue of counsel's ineffective assistance). Here, no motion for
new trial was filed. 
            To defeat the presumption of reasonable professional assistance, "[a]ny allegation of
ineffectiveness must be firmly founded in the record and the record must affirmatively demonstrate
the alleged ineffectiveness." McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). 
Where the alleged derelictions are primarily errors of omission outside the record rather than
commission revealed in the trial record, collateral attack may be the vehicle by which a thorough and
detailed examination of alleged ineffectiveness may be developed and spread on a record. Jackson
v. State, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998). 
            In this case, the record shows no reasons for trial counsel's actions, and we may not presume
that they were without reason. The contention of error is overruled.
            We affirm the judgment. 
 


                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          July 13, 2004
Date Decided:             October 13, 2004

Do Not Publish